## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DIGOIL,

      67 9th Street Parkmore,
      Sandton, South Africa, 2146

               *Petitioner*,

   *v.*

Democratic Republic of Congo,

      Palais de justice, 3eme Niveau,
      Place de l'Indépendance
      Gombe, Kinshasa
      Democratic Republic of Congo

               *Respondent*.

Civil Action No. _____

## Petition to Confirm Arbitral Award

Petitioner DIGOIL (formerly known as Divine Inspiration Group) brings this action to confirm a $619,270,111.62 plus interest arbitral award (the "Award") issued on November 7, 2018 in International Chamber of Commerce ("ICC") Arbitration No. 22370/DDA against Respondent, the Democratic Republic of Congo ("DRC"), following arbitration proceedings seated in Paris, France. Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (the "New York Convention") (Ex. 1 hereto), and its implementing legislation, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, DIGOIL requests that this Court confirm the Award and enter judgment in DIGOIL's favor in the amount of the Award.

**Parties**

1.     Petitioner DIGOIL is a South African-controlled exploration company headquartered in South Africa.

2.     Respondent the Democratic Republic of Congo is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602-1611.

**Jurisdiction and Venue**

3.     This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity from jurisdiction" under the FSIA, 28 U.S.C. § 1605(a)(1), (6).

4.     Pursuant to Section 1605(a)(1) of the FSIA, 28 U.S.C. § 1605(a)(1), DRC is not entitled to immunity from jurisdiction in this action because it explicitly waived its "immunity from jurisdiction" over arbitration enforcement actions in its agreement to arbitrate the underlying dispute.  *See* Award ¶ 12 (Ex. A to Decl. of Matthew S. Rozen ("Rozen Decl.") (Ex. 2 hereto)); December 14, 2007 Production Sharing Agreement, § 30.4 (Ex. B to Rozen Decl.) (the "2007 Agreement"); January 21, 2008 Production Sharing Agreement, § 30.4 (Ex. C to Rozen Decl.) (the "2008 Agreement").

5.     Pursuant to Section 1605(a)(1) of the FSIA, 28 U.S.C. §1605(a)(1), DRC also is not entitled to immunity from jurisdiction because this is a proceeding to confirm an arbitral award pursuant to the New York Convention, and DRC implicitly waived its immunity from jurisdiction over such proceedings by becoming a party to that Convention.  *See Creighton Ltd. v. Gov't of*

*State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999); *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019).[1]

6.      In addition, pursuant to Section 1605(a)(6) of the FSIA, 28 U.S.C. § 1605(a)(6), DRC is not entitled to immunity from jurisdiction over this action because this is an action to confirm an arbitral award made pursuant to two arbitration agreements between DIGOIL and DRC, *see* 2007 Agreement § 30.1; 2008 Agreement § 30.1, and confirmation of the Award is governed by the New York Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards.

7.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a "proceeding falling under the [New York] Convention," and is therefore "deemed" by the FAA "to arise under the laws and treaties of the United States," 9 U.S.C. § 203.

8.      This Court has personal jurisdiction over DRC pursuant to the FSIA, 28 U.S.C. § 1330(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

## The Underlying Dispute

9.      On December 14, 2007 and January 21, 2008, DIGOIL and DRC entered into production-sharing agreements for the production of certain hydrocarbon resources in the Congo Basin and the Albertine Graben.  Award ¶¶ 68, 70; 2007 Agreement; 2008 Agreement.  The agreements each provided that DIGOIL would execute oil works aimed at discovering and exploiting hydrocarbon deposits, and that DIGOIL would share revenue from this exploitation with DRC.  Award ¶¶ 69-70.  The agreements further provided that DRC would timely obtain all necessary approvals for drilling and extraction of hydrocarbon resources, including an order of approval from the President of DRC.  *Id.* ¶¶ 114, 122, 172.

---

[1] *See also* http://www.newyorkconvention.org/countries (listing DRC as a party to the New York Convention).

10.     To protect DIGOIL's investment in DRC, in each production-sharing agreement, the parties agreed to submit disputes to "arbitration in accordance with the Arbitration Rules of the International Chamber of Commerce of Paris." Award ¶ 12.  DRC also explicitly "waive[d] any immunity in proceedings relating to the execution of any arbitral award rendered." *Id.*

11.     Despite DRC's contractual commitments, DIGOIL was prevented from producing hydrocarbon resources under the production-sharing agreements because DRC failed to obtain the requisite presidential order approving the 2007 Agreement until October 18, 2017—nearly ten years after the parties entered the agreement—and because DRC awarded exploration work to another entity with respect to the portion of the Albertine Graben covered by the 2008 Agreement. Award ¶¶ 143-74.  As a result of these actions, DIGOIL incurred significant losses and lost profits. *Id.* ¶¶ 181, 186-87, 204, 207, 211, 217.

12.     On October 31, 2016, DIGOIL initiated arbitration in the International Court of Arbitration of the ICC.  Award ¶¶ 12, 16, 87.  DIGOIL contended that DRC's failure to timely issue the approval order from the President of DRC resulted in a breach of its obligations under the 2007 Agreement, and that DRC's allocation of exploration work of the Albertine Garden to another entity unilaterally and unlawfully terminated the 2008 Agreement.  *Id.* ¶ 87; *see also id.* ¶¶ 143-74.

13.     An ICC arbitral tribunal (the "Tribunal") was constituted on June 22, 2017.  Award ¶ 27.  After the submission by both parties of their written pleadings, the Tribunal held a hearing on the merits in Paris, France from June 28, 2018 through June 29, 2018.  *Id.* ¶¶ 27, 54-56.

14.     On November 7, 2018, the Tribunal rendered the Award, finding that DRC breached its production-sharing agreements with DIGOIL by: (1) failing to timely issue to DIGOIL the presidential order required by the 2007 Agreement; and (2) reallocating the oil production site

covered by the 2008 Agreement to another entity, thereby unilaterally terminating that agreement. *See* Award ¶¶ 68-72, 87, 143-74, 260(b)-(c).

15.     The Award requires DRC to pay $617,400,178 as damages, Award ¶ 260(f), plus $760,000 in arbitration costs and $1,109,933.62 in legal representation costs and expenses, *id.* ¶ 260(h), for a total of $619,270,111.62.  In addition, the Award requires DRC to pay interest on this sum at the rate of return on 20-year U.S. Treasury bonds, plus 2%, from the date of the Award (November 7, 2018) until the Award is paid in full.  *Id.* ¶¶ 260(f), (h).

16.     On April 2, 2019, DRC filed an appeal seeking annulment of the Award before the Paris Court of Appeal.  Appeals Decision ¶ 5 (Ex. D to Rozen Decl.).  On January 7, 2020, that court dismissed the appeal and granted exequatur of the arbitral award.  *Id.* § VI, ¶¶ 1-2.

## Legal Basis for Relief

17.     The New York Convention is a multilateral international treaty between 162 nations governing "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought."  New York Convention, art. I(1).  The Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon."  *Id.*, art. III.

18.     The United States is a contracting party to the New York Convention and has agreed to apply the Convention to disputes arising out of a "commercial" relationship.  New York Convention, 21 U.S.T. at 2560.  Congress codified the New York Convention in the FAA, 9 U.S.C. §§ 201-208.

19.     In the United States, an arbitral award issued pursuant to arbitration conducted in the territory of a party to the Convention falls under the Convention and the FAA provisions implementing it if the award "aris[es] out of a legal relationship, whether contractual or not, which

is considered as commercial."  9 U.S.C. § 202.  An exception is that an award "arising out of . . . a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."  *Id.*  As a result, the FAA applies when "'(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.'"  *Africard Co. Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016).

20.    Enforcement of an arbitral award that is subject to the New York Convention is governed by Section 207 of the FAA, which provides that "any party to the arbitration may apply . . . for an order confirming the award as against any other party to the arbitration" within three years after the arbitral award has been issued.  9 U.S.C. § 207.  The party seeking confirmation of the award must submit the "duly authenticated original award or a duly certified copy thereof" and the "original agreement [to arbitrate] . . . or a duly certified copy thereof."  New York Convention, art. IV(1).

21.    Upon submission of an application for confirmation, the court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added).  "Federal courts in the United States have minimal discretion to refuse to confirm an arbitration award under the FAA."  *Tatneft*, 301 F. Supp. 3d 175, 184 (D.D.C. 2018) (citing 9 U.S.C. § 207).  Indeed, "[c]onfirmation proceedings are generally summary in nature" because the New York Convention "provides only several narrow circumstances where a court may deny confirmation of an arbitral award."  *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20

(D.D.C. 2011)   (citing cases); *see id.* ("[T]he showing required to avoid summary confirmation . . .  is high.").

## Cause of Action and Request for Relief

22.     Petitioner repeats and re-alleges the allegations in paragraphs 1 through 21 as if set forth fully herein.

23.     The Award falls under the New York Convention because it is based on two written production-sharing agreements that are commercial in nature and not entirely domestic in scope, and that provide for arbitration of disputes before the ICC in France, a signatory of the New York Convention.[2]  The agreements are commercial in nature because they concern the discovery and exploitation of hydrocarbon deposits to generate revenue for the parties to the agreement.  *See* Award ¶¶ 69-70.  The agreements relate to a foreign state and are not entirely domestic in scope because neither party to the agreement is a United States citizen and the agreement provides for performance within the DRC.

24.     As required by Article IV of the New York Convention, the Petition attaches duly certified copies of the Award and the agreements to arbitrate.  *See* Rozen Decl., Exs A, B, C.

25.     Pursuant to Section 207 of the FAA, therefore, the court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the New York Convention.  None of the New York Convention grounds for denying recognition and enforcement of an award apply in this case.

26.     For the foregoing reasons, DIGOIL is entitled to an order (a) confirming the Award pursuant to the New York Convention, and (b) entering judgment in DIGOIL's favor in the amount specified in the Award.

---

[2] http://www.newyorkconvention.org/countries.

WHEREFORE, DIGOIL requests that the Court enter an order:

(a) confirming the Award against DRC; and

(b) entering judgment against DRC and in favor of DIGOIL, ordering DRC to pay $619,270,111.62 plus interest calculated at the rate of return of U.S. Treasury bonds for the next 20 years, plus 2%, from the date of November 7, 2018 until the Award is paid in full.

Dated: April 30, 2020                                   Respectfully submitted,

                                                        /s/ Matthew D. McGill
Rahim Moloo, N.Y. Bar #4628616                          Matthew D. McGill, D.C. Bar #481430
rmoloo@gibsondunn.com                                   mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP                             Matthew S. Rozen, D.C. Bar #1023209
200 Park Avenue                                         mrozen@gibsondunn.com
New York, NY  10166                                     GIBSON, DUNN & CRUTCHER LLP
Telephone:  (212) 351-4000                              1050 Connecticut Avenue, N.W.
Facsimile:  (212) 351-4035                              Washington, D.C. 20036
                                                        Telephone: (202) 955-8500
                                                        Facsimile: (202) 467-0539

                                *Attorneys for DIGOIL*