IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIGOIL,

        *Petitioner*,

  v.

Democratic Republic of Congo,

        *Respondent*.

Civil Action No. 20-1130 (RJL)

**Petitioner DIGOIL's Memorandum of Law
in Support of its Motion for Default Judgment**

## **INTRODUCTION**

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), and its implementing legislation, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, Petitioner DIGOIL initiated this action against the Democratic Republic of Congo ("DRC") requesting that this Court confirm a $619,270,111.62-plus-interest arbitral award (the "Award") issued on November 7, 2018 in International Chamber of Commerce ("ICC") Arbitration No. 22370/DDA against DRC, following arbitration proceedings seated in Paris, France, and enter judgment in DIGOIL's favor in the amount of the Award.  *See* ECF No. 1; Award, Ex. A to the Declaration of Matthew S. Rozen in Support of Pet. to Confirm Arbitral Award ("Rozen Decl."), ECF No. 1-2.  In accordance with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(3), DIGOIL effected service of process on DRC on July 15, 2020, *see* ECF No. 14, but DRC failed to file an answer or responsive pleading within the requisite sixty days, *id.* § 1608(d).  As a result, DIGOIL requested that the Clerk of Court enter default against DRC under Federal Rule of Civil Procedure 55(a), which the Clerk entered on September 20, 2020.  DIGOIL now moves for entry of default judgment under 28 U.S.C. § 1608(e).

As set forth below, DIGOIL is entitled to relief.  This Court possesses subject-matter jurisdiction over DIGOIL's Petition and personal jurisdiction over DRC.  DIGOIL additionally has satisfied the procedural requirements of the New York Convention in filing with this Court certified copies of the Award and original copies of the arbitration agreements underlying the dispute, along with certified translations.  The Court need not resolve whether DRC could meet its high burden to demonstrate that the limited defenses in the New York Convention apply because DRC has not appeared to invoke them.  Even if it did, DRC would not succeed.  Accordingly, the New York Convention compels this Court to confirm the Award and enter judgment for DIGOIL.

**BACKGROUND**

**I.      DIGOIL Obtains An Arbitral Award Of More Than $600 Million Against DRC**

On December 14, 2007 and January 21, 2008, DIGOIL and DRC entered into production-sharing agreements for the production of certain hydrocarbon resources in the Congo Basin and the Albertine Graben.  Award ¶¶ 68, 70; December 14, 2007 Production Sharing Agreement, § 30.4, Ex. B to Rozen Decl., ECF No. 1-2 (the "2007 Agreement"); January 21, 2008 Production Sharing Agreement, § 30.4, Ex. C to Rozen Decl., ECF No. 1-2, (the "2008 Agreement").  The agreements each provided that DIGOIL would execute oil works aimed at discovering and exploiting hydrocarbon deposits, and that DIGOIL would share revenue from this exploitation with DRC.  Award ¶¶ 69-70.  The agreements further provided that DRC would timely obtain all necessary approvals for drilling and extraction of hydrocarbon resources, including an order of approval from the President of DRC.  *Id*. ¶¶ 114, 122, 172.

To protect DIGOIL's investment in DRC, in each production-sharing agreement, the parties agreed to submit disputes to "arbitration in accordance with the Arbitration Rules of the International Chamber of Commerce of Paris."  Award ¶ 12 (emphasis omitted).  DRC also explicitly "waive[d] any immunity in proceedings relating to the execution of any arbitral award rendered."  *Id*. (emphasis omitted).

Despite DRC's contractual commitments, DIGOIL was prevented from producing hydrocarbon resources under the production-sharing agreements because DRC failed to obtain the requisite presidential order approving the 2007 Agreement until October 18, 2017—nearly ten years after the parties entered the agreement—and because DRC awarded exploration work to another entity with respect to the portion of the Albertine Graben covered by the 2008 Agreement.  Award ¶¶ 143-74.  As a result, DIGOIL incurred significant losses and lost profits.  *Id*. ¶¶ 181, 186-87, 204, 207, 211, 217.

DIGOIL initiated arbitration in the International Court of Arbitration of the ICC on October 31, 2016. Award ¶¶ 12, 16, 87. DIGOIL contended that DRC's failure to timely issue the approval order from the President of DRC resulted in a breach of its obligations under the 2007 Agreement, and that DRC's allocation of exploration work of the Albertine Graben to another entity unilaterally and unlawfully terminated the 2008 Agreement. *Id.* ¶ 87; *see also id.* ¶¶ 143-74. DRC, for its part, argued that presidential approval is within the discretion of the President and there is no fixed deadline by a legal or regulatory provision for its issuance. *Id.* ¶ 91. As for the 2008 Agreement, DRC claimed that it was not terminated, as DIGOIL suggests, but rather was not in force when DRC awarded work to another entity. *Id.* ¶ 90. Even if it were in force, DRC claimed, the 2008 Agreement contained an offsetting mechanism allocating payment to DIGOIL that extinguished DRC's obligations. *Id.*

An ICC arbitral tribunal (the "Tribunal") was constituted on June 22, 2017. Award ¶ 27. After the submission by both parties of their written pleadings, the Tribunal held a hearing on the merits in Paris, France from June 28, 2018 through June 29, 2018. *Id.* ¶¶ 27, 54-56.

On November 7, 2018, the Tribunal rendered the Award, finding that DRC breached its production-sharing agreements with DIGOIL by: (1) failing to timely issue to DIGOIL the presidential order required by the 2007 Agreement; and (2) reallocating the oil production site covered by the 2008 Agreement to another entity, thereby unilaterally terminating that agreement. *See* Award ¶¶ 68-72, 87, 143-74, 260(b)-(c). The Award requires DRC to pay $617,400,178 as damages, *id.* ¶ 260(f), plus $760,000 in arbitration costs and $1,109,933.62 in legal representation costs and expenses, *id.* ¶ 260(h), for a total of $619,270,111.62. In addition, the Award requires DRC to pay interest on this sum at the rate of return on 20-year U.S. Treasury bonds, plus 2%, from the date of the Award (November 7, 2018) until the Award is paid in full. *Id.* ¶¶ 260(f), (h).

DRC filed an appeal seeking annulment of the Award before the Paris Court of Appeal. Appeals Decision § II, ¶ 5, Ex. D to Rozen Decl., ECF No. 1-2.  On appeal, DRC argued that the Tribunal failed to apply Congolese law, as articulated in a decision of the former Supreme Court of Justice on the discretionary powers of the President, and thus went "beyond the scope of its mission." *Id.* § IV, ¶ 9.  DRC also added that recognition or enforcement of the Award would be "contrary to international public order." *Id.* ¶ 12.  The court dismissed the appeal on January 7, 2020, and granted exequatur of the arbitral award.  *Id.* § VI, ¶¶ 1-2.  DRC has yet to appeal the decision, but recently sought an extension to that deadline.

## II.     DIGOIL Seeks To Confirm Its Arbitral Award In This Court

On April 30, 2020, DIGOIL initiated this action seeking confirmation of the Award under the New York Convention and the FAA, its implementing legislation.  *See* ECF No. 1.

DIGOIL then effected service in accordance with the FSIA, 28 U.S.C. § 1608(a)(3), by requesting that the Clerk of Court dispatch the Summons, Petition, Notice of Suit pursuant to 22 C.F.R. § 93.2, and this Court's Standing Order, together with French translations of all documents that did not already include French text (collectively, the "Service Documents"), to the head of the Ministry of Foreign Affairs.  *See* Request for Foreign Mailing, ECF No. 12.  The Clerk of Court dispatched the Service Documents on June 29, 2020, *see* ECF No. 13, and service was effected on July 15, 2020.  *See* Return of Service, ECF No. 14.

DRC failed to file an answer or responsive pleading by September 14, 2020, sixty days after service was made, as required by the FSIA, *see* 28 U.S.C. § 1608(d).  DIGOIL accordingly requested that the Clerk of Court enter default under Federal Rule of Civil Procedure 55(a).  *See* ECF No. 15.  The Clerk of Court entered the default on September 20, 2020.  *See* ECF No. 16.  DIGOIL now moves for an entry of default judgment.

## ARGUMENT

Under 28 U.S.C. § 1608(e) of the FSIA and Federal Rule of Civil Procedure 55(b)(2), a default judgment is proper when a petitioner establishes its "claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). To meet this burden, a petitioner may "'suppor[t]'" its allegations by "'documentary and affidavit evidence,'" *Firebird Global Master Fund II Ltd. v. Republic of Nauru*, 915 F. Supp. 2d 124, 126 (D.D.C. 2013), and is not required "to rebut . . . hypothetical . . . defense[s]," *Maalouf v. Islamic Republic of Iran*, 923 F. 3d 1095, 1113 (D.C. Cir. 2019); *see also id.* ("It is not the responsibility of the courts to act *sua sponte* to raise affirmative defenses on behalf of defendants who do not appear.").

Here, DIGOIL is entitled to a default judgment confirming the Award against DRC and entering a judgment in its favor in the amount of the Award because it has adhered to the provisions of the FSIA, the New York Convention, and the FAA. DIGOIL—through the Clerk of Court—executed service of process on DRC. When DRC failed to timely respond, DIGOIL requested and received an entry of default against DRC. In addition, DIGOIL complied with the requirements of the New York Convention by filing certified copies of the arbitral award and original copies of the arbitration agreements, along with certified translations thereof. *See* New York Convention, art. IV(1); *see* Exs. A-C to Rozen Decl. Because these procedural requirements have been satisfied, the FAA directs the Court to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U. S. C. § 207; *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) ("[T]he FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards."). But the party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation" applies. *Gold Reserve, Inc. v. Bolivian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015). Because DRC has "not

5

even appeared in the matter," it has not met this heavy burden. *Customs & Tax Consultancy LLC v. Democratic Republic of the Congo*, No. 1:18-cv-1408, 2019 WL 4602143, at *1 (D.D.C. Sept. 23, 2019) (entering default judgment confirming award under the New York Convention against DRC). Nor could DRC prevail on these limited grounds for denying confirmation anyway. Accordingly, and for the reasons set forth below, this Court should enter a default judgment and grant DRC the relief it seeks in its Petition to Confirm Arbitral Award.

I. **This Court Has Subject-Matter Jurisdiction Over This Action And Personal Jurisdiction Over DRC Under The FSIA**

At the threshold, this Court has subject-matter jurisdiction over this action, and personal jurisdiction over DRC. Under the FSIA, a "foreign state is presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). But the FSIA enumerates several exceptions to this immunity. *See generally* 28 U.S.C. § 1605. Specifically, the FSIA grants federal courts subject-matter jurisdiction over "any nonjury civil action against a foreign state . . . with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). And it confers "[p]ersonal jurisdiction over a foreign state . . . as to every claim for relief over which the district courts have [subject-matter] jurisdiction" under § 1330(a). *Id.* § 1330(b). Two exceptions to immunity—the waiver exception, *id.* § 1605(a)(1), and the arbitration exception, *id.* § 1605(a)(6)—apply here and establish this Court's subject-matter jurisdiction and personal jurisdiction with respect to this case.

**The Waiver Exception**: The FSIA's waiver exception provides that a foreign state is subject to jurisdiction in any case in which it "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Here, both the 2007 and 2008 Agreements expressly and unambiguously waive DRC's immunity with respect to enforcement of arbitration awards arising from disputes under those agreements. The agreements each contain the following provision:

6

"'The DRC' hereby irrevocably waives any immunity in proceedings relating to the execution of any arbitral award rendered by a Court of Arbitration . . . , including without limitation, any immunity relating to service, immunity from jurisdiction and immunity from enforcement with respect to its property, except public property of the Democratic Republic of the Congo." *See* Award ¶ 12; 2007 Agreement, § 30.4; 2008 Agreement, § 30.4. The Award was issued by an ICC tribunal constituted in accordance with the Agreements. *See* 2007 Agreement, § 30.1; 2008 Agreement, § 30.1. This action to enforce the Award thus falls squarely within DRC's express waiver of "immunity from jurisdiction."

This Court also has subject-matter jurisdiction under the FSIA's waiver exception for a second, independent reason: This action is a proceeding to confirm an arbitral award pursuant to the New York Convention, and DRC implicitly waived its immunity from jurisdiction over such proceedings by becoming a party to that Convention. *See Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999); *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019).[1]

**The Arbitration Exception**: This Court also possesses subject-matter jurisdiction via the FSIA's arbitration exception. That exception permits a proceeding against a foreign state to "confirm an award" made pursuant to an agreement "by the foreign state," "with or for the benefit of a private party," to "submit to arbitration," if the "award is . . . governed by a treaty," such as the New York Convention, that is "in force for the United States" and that "call[s] for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). It is well settled that the New York Convention falls within the ambit of § 1605(a)(6). *See, e.g.*, *Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir. 2015); *Creighton*, 181 F.3d at 123-24 (The New York

---

[1] *See also* http://www.newyorkconvention.org/countries (listing DRC as a party to the New York Convention).

7

Convention is "'exactly the sort of treaty Congress intended to include in the arbitration exception.'").

Congress codified the New York Convention in the FAA. *See* 9 U.S.C. §§ 202 *et seq.* The FAA, in turn, provides that any "action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and that the "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy," *id.* § 203. The FAA (and therefore the Convention) applies to an "arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," unless that relationship is entirely between U.S. citizens and lacks other significant foreign connection. *Id.* § 202. Thus, the FAA applies when "'(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.'" *Customs & Tax Consultancy*, 2019 WL 4602143, at *3.

DIGOIL's action satisfies these requirements. DIGOIL filed the two written agreements between DIGOIL and DRC, by which DIGOIL agreed to execute oil works aimed at discovering and exploiting hydrocarbon deposits, the profits of which would be shared with DRC, and by which the parties agreed to arbitrate the underlying dispute in Paris, France, a signatory of the New York Convention. *See* Pet. ¶ 9; *see also* Award ¶¶ 69-70; 2007 Agreement § 30.1; 2008 Agreement § 30.1.[2] The subject matter of the agreement is commercial, which refers to "'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103-04 (D.C. Cir. 2015). Courts routinely find this requirement satisfied when a private actor is providing a service to a foreign sovereign

---

[2] http://www.newyorkconvention.org/countries.

government. *See, e.g.*, *Customs and Tax Consultancy*, 2019 WL 4602143, at *4 (finding dispute commercial when arising out of "service contract between a company and a government to consult in overhauling the collection of customs duties"); *Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 124 (D.D.C. 2016) (finding dispute commercial when arising out of "service contract between a company and a government to provide biometric and electronic passports"). The same is true here—DIGOIL promised to provide its services of discovering and exploiting hydrocarbon deposits and agreed to share its revenue with DRC. *See* Pet. ¶ 9. Finally, the agreements relate to a foreign state and are not entirely domestic in scope because neither party to the agreement is a United States citizen and the agreement provides for performance within DRC. *See id.*; *see also Customs and Tax Consultancy*, 2019 WL 4602143, at *3 (finding agreement not domestic when one party was DRC and work was to be performed primarily within DRC).

This Court, therefore, possesses subject-matter jurisdiction over this action and personal jurisdiction over DRC pursuant to the FSIA's waiver and arbitration exceptions.

**II.    DIGOIL Served DRC Pursuant To The FSIA, But DRC Failed To Respond**

DIGOIL properly served process in this action, and DRC defaulted by failing to respond. The FSIA's "hierarchical" framework for serving process "on 'a foreign state'" lays out "four methods" that must be attempted sequentially until one succeeds. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019) (quoting 28 U.S.C. § 1608(a)). DIGOIL executed service of process on DRC pursuant to the FSIA's third method because the first two methods were unavailable.

The FSIA's first method—service by "any special arrangement for service between the plaintiff and the foreign state," 28 U.S.C. § 1608(a)(1)—does not apply because DIGOIL and DRC do not have any special arrangement for service of process in an arbitration enforcement

action.³  DIGOIL was not required to attempt service under the FSIA's second method, which requires service pursuant to any "applicable international convention on service of judicial documents," *id.* § 1608(a)(2), because no such convention governs service of process here.

DIGOIL thus effected service on DRC via the FSIA's third method—"sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3).  The docket reflects: (1) DIGOIL's request to the Clerk of the Court to dispatch service to the head of DRC's ministry of foreign affairs under § 1608(a)(3), ECF No. 12; (2) the Clerk's affidavit, under penalty of perjury, that she dispatched the required materials through DHL, ECF No. 13; and (3) the Return of Service reflecting the ministry's receipt of the dispatched materials on July 15, 2020, ECF Nos. 14, 14-4.

Under § 1608(c)(2), service was effective "as of the date of receipt."  28 U.S.C. § 1608(c)(2).  DRC, therefore, was required to serve an answer or other responsive pleading "within sixty days after service has been made." *Id.* § 1608(d).  More than 60 days has elapsed without DRC filing an answer or other responsive pleading to the Petition.  DIGOIL consequently requested the Clerk of Court to enter default, *see* ECF No. 15, and the Clerk of Court properly did

---

³ The 2007 Agreement and 2008 Agreement contain provisions that direct DIGOIL to provide notices under the Agreements to the head of DRC's Ministry of Hydrocarbons.  *See* 2007 Agreement, art. 33 ("All notices given under this Contract shall be in writing and set to the Parties by registered post, personal delivery or at the following address."); 2008 Agreement, art. 33 ("All notifications regarding this contract must be addressed in writing to the Parties by registered letter.").  To the extent these provisions may be construed as "special arrangement[s] for service" of process under 28 U.S.C. § 1608(a)(1), DIGOIL effected service in compliance with both provisions on May 19, 2020.  *See* Ex. E to Return of Service, ECF No. 14-5, at 2.

10

so on September 20, 2020, *see* ECF No. 16. To date, DRC has not filed an answer or responsive pleading or appeared in the action.

**III.    The Award Should Be Confirmed Under The New York Convention**

The New York Convention is a multilateral treaty providing for the recognition and enforcement of foreign arbitral awards. *See* New York Convention, art. I § 1. Once a petitioner satisfies the procedural requirements of the New York Convention and its implementing legislation, *see id.* IV(1), the FAA provides that this Court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention." *Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004) (quoting 9 U.S.C. § 207) (emphasis added); *see also Africard*, 210 F. Supp. 3d at 127 (recognizing "'little discretion'" under New York Convention to deny confirmation of an arbitral award). DIGOIL has complied with the Convention's procedural requirements, and none of the limited defenses applies.

**1.** "'Consistent with the 'emphatic federal policy' in favor of arbitral dispute resolution,'" *Africard*, 210 F. Supp. 3d at 127, the New York Convention and FAA imposes few procedural requirements for petitioners seeking to confirm an arbitral award. Section 207 of the FAA, for example, provides that "any party to the arbitration may apply . . . for an order confirming the award as against any other party to the arbitration" within three years after the arbitral award has been issued. 9 U.S.C. § 207. And the party seeking confirmation must submit the "duly authenticated original award or a duly certified copy thereof" and the "original agreement [to arbitrate] . . . or a duly certified copy thereof." New York Convention, art. IV(1).

Here, the Petition and accompanying exhibits that DIGOIL submitted comply with these requirements. *See* ECF Nos. 1, 1-2. Pursuant to Article IV of the New York Convention, a duly certified copy of the Award, along with a certified translation, was attached to the Petition as

11

Exhibit A, original copies of the 2007 and 2008 Agreements, and translations thereof, were attached to the Petition as Exhibits B and C. *See* ECF No. 1-2. The Award was rendered on November 7, 2018, and DIGOIL filed its Petition on April 30, 2020, well within three years. *See* 9 U.S.C. § 207. DIGOIL has therefore satisfied the procedural requirements of the New York Convention, and this Court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207 (emphasis added).

    **2.** Article V(1) of the New York Convention enumerates five grounds under which a court may refuse recognition and enforcement of an award "at the request of the party against whom it is invoked,"—the respondent to a petition seeking recognition of an arbitral award:

    (A)    The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

    (B)    The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

    (C)    The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or

    (D)    The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or

    (E)    The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V(1).

    These grounds are inapplicable here because DRC has not appeared before the Court to invoke them. Thus, DRC necessarily cannot meet its "heavy burden" to "resis[t] confirmation." *Gold Reserve*, 146 F. Supp. 3d at 120. Courts routinely grant motions for default judgment when,

12

as here, the petitioner satisfies the procedural requirements of the New York Convention and the defaulting foreign sovereign defendant has not met its burden of proof on its defenses because it "has not even appeared in th[e] matter." *E.g. Customs & Tax Consultancy*, 2019 WL 4602143, at *5 (entering default judgment confirming award under the New York Convention against DRC); *Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) ("Given [foreign sovereign's] default status in this case, it obviously has not put forth any arguments against confirmation."); *Africard*, 210 F. Supp. 3d at 127 ("Given Niger's lack of appearance in this matter, it has not met its burden on any of those objections.").

Nor could DRC prevail on these defenses even if it had appeared in this action. As for (A), DRC has no basis to claim that as a foreign sovereign, it did not have the necessary capacity to enter the Agreements, or that the Agreements are in violation of Congolese and/or French law. Tellingly, DRC has not asserted those arguments before the Tribunal or the Paris Court of Appeal. *See* Award ¶¶ 90-91; Appeals Decision § IV, ¶¶ 8-12. (B) and (D) are plainly inapplicable because DRC participated fully in the arbitration and in the constitution of the Tribunal. *See* Award ¶¶ 16-27; *see also Customs & Tax Consultancy*, 2019 WL 4602143, at *5 n.5 (finding defenses inapplicable when DRC participated in arbitration and constituted tribunal according to parties' agreement). (C) is likewise inapplicable because the Tribunal's ruling "fall[s] squarely within the issues raised by the parties in their submissions." *Customs & Tax Consultancy*, 2019 WL 4602143, at *5 n.5; *see* Award ¶¶ 87-99, 143-74. As for (E), the Award is final and binding on the parties. *See* Appeals Decision, § VI (granting "exequatur" or enforcement of the Award). That DRC sought an extension to file an appeal of the Appeals Decision in no way alters the finality of the Award or disturbs the Court's ability to enter a default judgment. *See Compagnie D'Enterprises*

13

*CFE, S.A. v. Republic of Yemen*, 180 F. Supp. 2d 12, 14-15 (D.D.C. 2001) (granting default judgment even though foreign sovereign filed a notice of appeal of annulment decision).

In addition to the above Article V(1) bases for denying confirmation, Article V(2) provides "two additional grounds for denying recognition of an arbitral award, whether the respondent asserts them or not: '(a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or (b) The recognition or enforcement of the award would be contrary to the public policy of that country.'" *Africard*, 210 F. Supp. 3d at 127 (quoting the New York Convention, art. V(2)).

Neither of these grounds applies here. The subject matter of the dispute—breach of contract—is "commonly settled by arbitration in the United States." *Customs and Tax Consultancy*, 2019 WL 4602143, at *6; *Africard*, 210 F. Supp. 3d at 127-28 (same); *Sterling Merch.*, 261 F. Supp. 3d at 53 (same). And in light of the "'emphatic federal policy in favor of arbitral dispute resolution,'" the recognition or enforcement of the Award is not contrary to the public policy of the United States. *Customs and Tax Consultancy*, 2019 WL 4602143, at *6; *Africard*, 210 F. Supp. 3d at 128 (same).

Accordingly, there is no basis under the New York Convention to deny DIGOIL's request for default judgment that confirms the Award and enters a judgment in the amount of the Award.

### IV.   This Court Should Enter Judgment In The Amount Of The Award Plus Interest

This Court should order DRC to pay the Award plus prejudgment interest at a rate of 5.03%, compounded annually, and postjudgment interest at the rate specified in 28 U.S.C. § 1961. As to prejudgment interest, the Award provides for interest to be "calculated on the rate of return on a 20-year U.S. Treasury bonds, plus 2% from the date of the Final award and until full payment," Award ¶ 259. The rate of return on a 20-year U.S. Treasury bond on September 7,

2018—the date of the Award—was 3.03%.[4]  The proper interest rate is therefore 5.03% (3.03% plus 2%).  The Award contemplates that interest be compounded annually.  *See id.* ¶ 257 (relying on expert's interest calculation, which was based on "annual interest," *id.* ¶ 211).  Accordingly, the Court should enter judgment ordering DRC to pay the amount of the Award plus prejudgment interest at a rate of 5.03%, compounded annually, from the date of the Award until the date when judgment is entered, and postjudgment interest at the rate specified in 28 U.S.C. § 1961.

## CONCLUSION

For the reasons set forth above, DIGOIL respectfully requests that the Court enter a default judgment confirming the Award and ordering DRC to pay $619,270,111.62 plus prejudgment interest at a rate of 5.03%, compounded annually, from November 7, 2018 until the date when judgment is entered, and postjudgment interest at the rate specified in 28 U.S.C. § 1961.

Dated: October 12, 2020

Rahim Moloo, N.Y. Bar #4628616
rmoloo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Attorneys for DIGOIL*

---

[4] https://www.treasury.gov/resource-center/data-chart-center/interest-rates/pages/TextView.aspx?data=yieldYear&year=2018